## George T. Hodges *v.* Samuel Griggs and Reuben R. Thrall.

### [In Chancery.]

If one have an interest in property, to which two different persons claim title,
and which is dependent upon the validity of the claim of one of them, he may
sustain a bill in chancery, to compel them to adjust by litigation their respect-
ive rights.

Where the purchaser of a farm, upon which there was an attachment in favor of
a creditor of a former owner, gave a promissory note to the vendor, for a por-
tion of the purchase money, which was to become void in case the attachment
should be valid, and the attaching creditor obtained judgment and levied his
execution upon the land attached, it was held, that the holder of the note might
sustain a bill in chancery against the maker of the note and the attaching cred-
itor, to compel an adjustment, by a suit at law between them, of their respect-
ive rights to the land.

APPEAL from the court of chancery.  The orator alleged, in his
bill, that the defendant Griggs, on the 20th of April, 1833, having
purchased a farm of one Henry A. Allen, executed to him his prom-
issory note for $370.77, as part of the consideration, which was
made subject to a condition, that Griggs should retain that amount
of the purchase money as security against a claim which the defend- ·

ant Thrall had upon said farm by an attachment in his favor against Oliver Allen, a former owner of the farm, and that Griggs should not be required to pay that amount, until the land should be freed from the attachment, or he be secured against it to his satisfaction; that the orator had become the owner of said note; that Griggs and those claiming under him had ever remained in peaceable possession of the farm; that Thrall had taken no means to enforce his claim to the farm, and that he had in fact no valid claim to it; but that Thrall refused to execute a quitclaim deed of the farm to Griggs, although requested by the orator to do so, and that Griggs refused to pay the note, while the claim of Thrall was outstanding. And the orator prayed, that Thrall might be decreed to release his claim to the farm to Griggs, upon such conditions as should be equitable, and that Griggs might be decreed to pay the amount due upon his note, and for general relief.

The bill was taken as confessed as to Griggs. Thrall answered, alleging, that Oliver Allen, the former owner of the farm, was indebted to him on a promissory note for $413,46, dated April 14, 1830; that on the 20th of April, 1833, he caused the farm in question to be attached, in a suit upon said note, as the property of Oliver Allen; that Oliver Allen had previously conveyed the farm to Henry A. Allen,—which conveyance he alleged to be fraudulent and void; and that he obtained final judgment in his suit against Oliver Allen, and in 1841 caused the execution obtained by him to be levied upon a portion of the farm.

The court of chancery dismissed the bill; from which decree the orator appealed.

R. Pierpoint for orator.

Thrall & Pond for defendants.

The opinion of the court was delivered by

BENNETT, J. This farm being, at the time it was sold by Henry A. Allen to Griggs, incumbered by Mr. Thrall's attachment against Oliver Allen, it was provided in the note now in question, that Griggs should retain that amount of the purchase money for the farm in his own hands, as a security against Thrall's attachment;

and Griggs was not to pay the note, until he was secured against Thrall's claim to his satisfaction, or until the land was freed from the attachment.  The bill is taken as confessed by Griggs; and Thrall, in his answer, sets up his claim of title by means of his levy against Oliver Allen, in 1841; and insists, that the conveyance from Oliver Allen to Henry A. Allen was fraudulent.

It is alleged in the bill, that Griggs, and those claiming under him, have always remained in the quiet and peaceable possession of the entire farm, and that Thrall has never taken any measures to get into possession under the levy of his execution, and that, upon application, he refuses to release his claim of title to Griggs.  Thrall does not answer these allegations in the bill, but simply sets up his claim of title in his answer.  Though the orator has the title to the note in question, yet he cannot enforce it against Griggs, so long as his title is incumbered by Thrall's attachment and levy against Oliver Allen.  This note is effectually locked up, and has in fact remained so for years.  At law it must remain in that situation, so long as it shall please Thrall to let his claim of title sleep.  The orator's right to enforce payment of the note is dependent upon Thrall's title; and it would be a reproach to the law, if the orator had no means of determining, whether there is any value in his note.  To determine this, the validity of Thrall's title must be tested. If a man have an equitable right, chancery will find means to give· him relief.

This case, though probably new in its facts, yet calls for no new principle of chancery law, but simply for the application of a well known and long established principle to a new instance.  The orator has in equity an interest in the title to that portion of the farm, which Thrall has levied his execution upon, inasmuch as the value of his note is dependent upon that title; and his interest must await the result of the title claimed by Thrall.  So long as this cloud is hanging over Griggs' title, he is protected from the payment of his note; and this operates to the injury of the orator, and consequently the orator has an interest in having the title settled; and we think, especially in a case like this, the orator must have the right to come into chancery to compel a settlement of the title.

If Thrall expects to assert his title, he has been guilty of gross delay.  It is now some seven or eight years since his levy, and no

Hodges *v.* Griggs et al.

measures have been adopted to enforce his rights. If no one were affected by the delay but himself, all would be well; but when such delay prejudices the rights of another person, chancery may well compel *action*, if it have been unreasonably delayed.

The result must be a reversal of the decree of the chancellor as to Thrall, with costs in this court, and the cause be remanded to the court of chancery, with instructions that that court enter a decree against the defendant Thrall, requiring that he shall make his election to commence and prosecute, either at law, or in chancery, a' suit to final judgment, to settle his title to that portion of the farm covered by this defendant's levy against Oliver Allen, by some short day to be fixed by the chancellor; and if he shall neglect or omit either to commence a suit, or prosecute it to final judgment, by the time fixed by the chancellor, or if, having elected to commence such suit, shall fail to establish his title, then, upon either event, the chancellor to decree, that said Thrall convey by a valid quitclaim deed, duly executed by him, all the right and title, which he acquired to the premises by means of his attachment and levy against Oliver Allen, to Samuel Griggs, his heirs and assigns, in fee, by some time to be fixed by the chancellor, and be perpetually enjoined, both in law and in chancery, from setting up any title thereto under his said attachment and levy, under such penalty, as the chancellor shall prescribe; and the decree of the chancellor as to Griggs is reversed,—the chancellor to retain the bill to await the result in relation to the establishment of Thrall's title, and, if not established, to pass a decree according to this mandate; but if established, the bill to be dismissed.