HARRY DUNDON *v.* WALTER WALDRON'S ADMR.

May Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 2, 1945.

*Vernon J. Loveland* for the defendant.

*Asa S. Bloomer* for the plaintiff.

JEFFORDS, J. This is a bill in chancery praying for the reformation or the setting aside of certain deeds. A hearing was had and a decree was entered setting aside the deeds in question, ordering the defendant to discontinue a certain lawsuit based on the deeds and enjoining him from any further litigation based thereon.

From the facts found by the chancellor it appears that the plaintiff and his wife, Fannie, lived on a farm in Brandon, the title to which was held by the wife. Walter Waldron, a brother of Mrs. Dundon, also lived on the farm and all three operated the same.

Charles H. Brown, an attorney of this state, was requested by the plaintiff to draw certain conveyances. Pursuant to this request he drew a deed from Mr. and Mrs. Dundon to himself and from himself to the plaintiff and Walter Waldron. The effect of these deeds was to convey title to the farm from Mrs. Dundon to the plaintiff and Walter Waldron, as joint tenants. The second deed contained the following clause: "Meaning and intending hereby to create a joint tenancy with the right of survivorship".

The attorney took the deeds to the Rutland hospital where Mrs. Dundon was a patient. Here the attorney and all of the interested parties conferred concerning the deeds and the transfer of title resulting therefrom. At this conference Mrs. Dundon stated that she wished to repay Waldron for his services on the farm, that the farm was his home, that if he continued to work there she wanted him to have the same interest as her husband, and that she wanted the farm to go to the survivor of the plaintiff and Waldron. Brown explained to Mrs. Dundon, the plaintiff and Waldron the legal effects of a deed to joint tenants but he failed to explain that the right of survivorship could be defeated during the lifetime of the grantees. The deeds were executed, delivered and recorded.

Mrs. Dundon, who was in full possession of her mental faculties at all times here material, is dead. After her death Waldron also died. Before his death he conveyed his interest in the farm to

one Nickerson who in turn reconveyed the same to Waldron. Also before his death Waldron brought a petition for partition claiming that he had an equal undivided one half interest in the farm. The defendant is the duly appointed administrator of Waldron's estate.

The case is here on the defendant's exceptions to the following findings of the chancellor:

> 13. "Fannie Dundon, the plaintiff and Walter Waldron were farm people with no special legal knowledge. They relied on Charles H. Brown's exposition of the law."
>
> 14. "Fannie Dundon, the plaintiff and Walter Waldron all believed as a direct result of Charles H. Brown's legal advice that the transfer of title contemplated would create a vested and irrevocable right of survivorship in the plaintiff and Walter Waldron. With this understanding they all expressed satisfaction with the deeds as drawn".
>
> 18. "Beyond a reasonable doubt the execution and delivery of the deeds above noted was because of a mistake of both fact and law on the part of Fannie Dundon, the plaintiff and Walter Waldron."

■ The ground of the exception to finding 13 is that of lack of supporting evidence. The defendant says that there is no direct evidence in the case to support either of the statements in this finding. But it is not necessary to warrant a finding of fact by the trier that there be direct testimony of a witness for its basis. From the fact that the persons named in the finding were farm people it could reasonably be inferred, there being no testimony to the contrary, that they had no special legal knowledge. From these facts and the employment of an attorney to draw the conveyances and the attention to his explanation of the legal effects of the same, it could also be so inferred that the parties relied on the attorney's exposition of the law. These reasonable inferences to be drawn from the circumstances shown and other facts found fully warranted the finding in question. *Fairbanks* v. *Frank,* 107 Vt 45, 49, 176 A 294; *McClary* v. *Hubbard,* 97 Vt 222, 238, 122 A 469.

The grounds of the exceptions to findings 14 and 18 are in substance that they are not warranted by the evidence and that

the mistake, if any, was one of law for which no relief will be granted in equity.

From the circumstances under which the conveyances in question were executed, other facts found and the evidence, taken as a whole, with reasonable inferences to be drawn therefrom, the following factual picture of the case is presented: Mrs. Dundon, who was ill, desired before her death to place the title to the farm in her husband and her brother in such shape that upon the decease of either it would go to the survivor. To accomplish this purpose the attorney was employed who drew the deeds here involved.

Although the attorney failed to explain to the interested parties that the right of survivorship could be defeated during the lifetime of the joint tenants, the inference seems inescapable that all the parties believed, as a result of what the attorney told them in respect to the deeds, that the final vesting of title, as far as the plaintiff and Waldron were concerned, depended solely on the survivorship of one beyond the other. Though witness Brown said he had no way of telling whether Mrs. Dundon understood that a joint tenancy could be defeated during the lifetime of both parties, it is clearly to be inferred that neither she nor her husband had this understanding. It is plain that Mrs. Dundon desired by the conveyances to provide a home on the farm for her husband and brother and the survivor. There is absolutely nothing in the case to indicate she intended that the title could or should be shared by any other person as a joint tenant during the lifetime of the original grantees; or that she or her husband, who had homestead rights in the premises, would have given the first deed if they had understood that Waldron could convey his interest to another during the lifetime of Dundon or bring partition proceedings for a division of the farm. If there be any doubt as to Waldron's belief on this matter it should be resolved against him. It is apparent that he must have fully understood what Mrs. Dundon intended to accomplish by the conveyances. It would have been fraudulent for him to have taken the second deed knowing that he could defeat its intended purpose by a conveyance during his lifetime. Fraud on his part is not to be presumed but if in fact there was such, neither he nor his estate should be permitted to benefit from it.

From the foregoing it is apparent that we cannot say, as a matter of law, that finding 14 was unwarranted.

316

■ The case here presented is one of mistake as to the legal effect of a written instrument. Courts of chancery grant relief in such cases whether the mistake be termed one of law or of fact. *Burlington B. & L. Ass'n.* v. *Cummings,* 111 Vt 447, 453, 17 A2d 319; *McKenzie* v. *McKenzie,* 52 Vt 271, 278; *Proctor* v. *Thrall,* 22 Vt 262, 267; *Mower et al.* v. *Hutchinson,* 9 Vt 242, 250.

■ The chancellor has found mistake beyond a reasonable doubt. We cannot say, as a matter of law, that the circumstances, facts and inferences to be drawn therefrom are so slight and inconclusive in character as to make erroneous this finding based thereon. *Ward* v. *Lyman,* 108 Vt 464, 468, 188 A 892.

*Decree affirmed.*